PENBROOK TRUST COMPANY, A CORPORATION, RESPONDENT, v. WIEGAND & COMPANY, A CORPORATION, APPELLANT.

Argued May 23, 1924—Decided October 20, 1924.

1. Where a plaintiff produces at the trial the promissory notes upon which the action is instituted and proves the signatures of the payee and endorsers (the making of the notes having been admitted in the answer) and rests, it is not error for the trial court to refuse to grant a motion to nonsuit based upon the grounds that the plaintiff had offered no proof of value given for the notes, no proof of consideration to the maker, and no proof that the plaintiff is a holder in due course, as the Negotiable Instrument law provides in section 24 (3 *Comp. Stat., p.* 3738) that every negotiable instrument is presumed to have been issued for a valuable consideration and every person whose signature appears thereon to have been a party for value; and in section 59 (3 *Comp. Stat., p.* 3741) that every holder is deemed *prima facie* to be a holder in due course until it is shown that his title to the instrument is defective.

2. In an action upon a promissory note it is immaterial whether the payee of the note has paid a note or notes given by it in exchange for the instrument in suit.

3. It is not error for a trial court to overrule a question asked upon cross-examination upon a subject not touched upon in the direct examination.

4. Where a party to a negotiable instrument who is secondarily liable thereon pays the holder of the instrument the amount due thereon the instrument is not discharged. The party paying it is remitted to his former rights and may again negotiate the instrument; except, (1) where it is payable to the order of a third person, and has been paid by the drawer; and (2) where it was made or accepted for accommodation, and has been paid by the party accommodated. 3 *Comp. Stat., p.* 3749, § 121, Negotiable Instrument law.

5. Where a trial court in stating in its charge the facts of the case varies slightly from the testimony and no harm appears to have been done to the defendant, the judgment rendered will not, on appeal, be reversed.

On appeal from the Supreme Court.

For the appellant, *Ernest L. Quackenbush (Ralph E. Lum,* of counsel).

For the respondent, *Pitney, Hardin & Skinner* (*Charles R. Hardin,* of counsel).

The opinion of the court was delivered by

KATZENBACH, J.   The plaintiff below, the Penbrook Trust Company, a Pennsylvania corporation, recovered a judgment in the Supreme Court against Wiegand & Company, a New Jersey corporation, for $4,237.08, from which Wiegand & Company have appealed to this court. The suit was instituted to recover the amount due upon two promissory notes for $2,000 each. The notes were issued under the following circumstances: In September, 1922, Wiegand & Company, manufacturing jewelers, were in need of funds. They made two promissory notes, each for $2,000, one dated September 21st, 1922, and the other dated September 23d, 1922, each payable four months after date at the Irving National Bank at Irvington, New Jersey. The names of the payees were left blank. These notes were delivered in New York City to the White Finance Company upon the promise of Mr. White that his company would give to the maker cash or other notes in exchange therefor. This promise was broken. Wiegand & Company never received the promised consideration. They demanded the return of the notes but never received them. In February, 1923, Wiegand & Company learned that the notes had come to the hands of the Paxtang Shoe Manufacturing Company. This company had obtained the notes from the Mutual Finance Company of Philadelphia in exchange for their notes of like amount. The notes at the time acquired were filled out, complete, and regular on their face, and were purchased by the Paxtang company, so far as the evidence discloses, in good faith and without notice of any irregularity or failure of consideration. On October 7th, 1922, the Paxtang company sold one of these notes to the Penbrook Trust Company and received credit for the face of the note, less discount. On October 13th, 1922, the other note was similarly disposed of to the same banking institution. The Penbrook company had no knowledge of the original blanks in the notes or of the failure of the maker to

receive consideration therefor. When the notes were sold by the Paxtang company to the Penbrook company, L. V. Fritz, the president of the Paxtang company, added his personal endorsement to the notes. At maturity the notes were not paid by the maker and were protested by the Penbrook company. In February, 1923, Mr. Fritz went to Irvington with these notes in his possession and attempted to collect them from Wiegand & Company. Mr. Fritz had obtained possession of the notes from the Penbrook company by giving it collateral. When unsuccessful in collecting the notes Mr. Fritz, upon his return, returned the notes to the Penbrook company and received back his collateral. The Paxtang company then paid one of the notes and gave a judgment note for the other. The Penbrook company, however, retained the notes as collateral for a larger indebtedness of the Paxtang company. On April 24th, 1923, the two notes in question were publicly sold by the Penbrook company. It purchased the notes at the sale. On May 18th, 1923, the present action was commenced.

The answer set up as defenses—*first*, that L. V. Fritz had paid the plaintiff the amount due, and had had delivered to him the notes; *second,* that the notes were given by the defendant, Wiegand & Company, to the Paxtang company, for the accommodation of the latter, and upon its promise to pay the same at maturity; *third,* that the notes were given to the Paxtang company upon its promise to pay a valuable consideration therefor, which it had failed to do, of which the Penbrook company had full knowledge; and *fourth,* that the Paxtang company obtained the notes by fraud practiced by it upon Wiegand & Company, of which the Penbrook company had full knowledge.

The plaintiff at the trial, through its secretary and treasurer, produced the notes and proved the endorsements thereon of the Paxtang company and L. V. Fritz, and the notes were offered in evidence. The plaintiff then rested. The defendant moved for a nonsuit upon the grounds that there had been no proof by the plaintiff of value given for the notes, no proof of consideration, and no proof that the plaintiff was a

holder in due course. This motion was denied and an ex-. ception taken. The defendant then produced witnesses who testified to the circumstances under which the notes were made and as to its version of what transpired upon the visit of Mr. Fritz to Irvington for the purpose of collecting the notes. The plaintiff offered in rebuttal testimony with reference to the discounting of the notes and the arrangements made between it and the Paxtang company by which Mr. Fritz was given the custody of the notes for the purpose of the trip to Irvington. Motions to direct a verdict for the plaintiff and for the defendant were each denied and exceptions taken. The court left to the jury for its consideration the question whether the plaintiff had obtained the notes before maturity without notice of any defect, in good faith, in the regular course of their business, for value. The court charged that if the jury found that the plaintiff did so acquire them, then they should find a verdict for the plaintiff. The jury returned a verdict for the plaintiff for the full amount of the notes, with interest. From the judgment entered on the verdict the defendant below has appealed. The grounds of appeal were argued by the appellant under six heads. These will be considered in the order presented in the appellant's brief.

The first ground argued is that the court erred in its refusal to nonsuit the plaintiff. The grounds of the motion have been stated. Briefly, they were lack of proof of (1) value given for the notes (presumably by the payee) ; (2) of consideration (presumably to the maker), and (3) that the Penbrook company had not proved that they were holders in due course. The appellant contends that it was incumbent upon the plaintiff to prove as a part of its case these facts. This position entirely overlooks the presumption of law which arise from the holding of a promissory note. The fifty-ninth section of our Negotiable Instrument law (3 *Comp. Stat., p.* 3742) provides that "every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title or any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person

under whom he claims, acquired the title as a holder in due course." Section 52 of the same act provides that "a holder in due course is a holder who has taken the instrument under the following conditions: (1) that it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had previously been dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." It is also provided in section 45 of the same act (3 *Comp. Stat., p.* 3740) that every negotiation is presumed to have been made before maturity, and in section 24 (3 *Comp. Stat., p.* 3738) that every negotiable instrument is presumed to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value. These provisions of our statute supply in the form of presumptions of law the proof of those matters which the appellant relied upon upon its motion to nonsuit. There was, therefore, no error in the refusal of the trial court to grant the motion.

The next point argued by the appellant deals with the overruling of three questions by the trial court. The first question was asked upon the cross-examination of Robert W. Gutshall, the secretary and treasurer of the Paxtang company. It was: "All these notes you exchanged have not been paid, had they?" It will be recalled that the notes upon which the present suit is based were obtained by the Paxtang company by the delivery to the Mutual Finance Company of an equal amount of its own notes. An exchange of notes involves value and consideration for each. In the case of *Savage* v. *Ball,* 17 *N. J. Eq.* 142, the court said: "Even if the notes of Ball & Company had been given directly to the corporation in exchange for its note, it would have been a sufficient consideration. The one promise is a good consideration for the other." Whether or not the notes given by the Paxtang company to obtain the notes of Wiegand & Company had or had not been paid was immaterial. The delivery

of its notes by the Paxtang company was the consideration it paid for the Wiegand & Company's notes, not the payment of the notes delivered, as the apellant argues, in order to make the question admissible. The question was properly overruled.

The second question overruled was asked of the same witness and was, "You do know, do you not, that the Penbrook Trust Company held some of your notes as collateral, don't you, yes or no?" This question was objected to as not cross-examination and the objection sustained. Cross-examination must be directed to the matters brought out upon direct examination. A reading of the direct testimony of Mr. Gutshall discloses no matter to which the question overruled could have been directed. It was therefore properly overruled by the trial court.

The third question which the appellant contends was improperly overruled was addressed to the witness Mr. L. V. Fritz on cross-examination. It was, "All of these notes you gave in exchange for these notes you received have not been taken care of or been paid by you, have they?" This is the same question, in effect, as asked of the witness Mr. Gutshall, and already considered. The question was properly overruled as being immaterial for the reasons given in passing upon the similar question asked of Mr. Gutshall.

The appellant next argues that the trial court should have directed a verdict for the defendant. It contends that, although the plaintiff was, undoubtedly, in the first instance, a *bona fide* holder for value, yet when the Paxtang company paid off these notes, as they claim, and took them up and endeavored to collect them, the situation was the same between the maker and payee as before the negotiation of the notes to the plaintiff, and that when the plaintiff again became possessed of the notes as collateral for other notes of the Paxtang company, which it held, that the notes sued on were taken with notice of their misappropriation and the failure of the maker to receive consideration therefor, and so subject to the defenses pleaded which precluded recovery upon the notes. The fallacy of this argument is twofold. It was

a disputed question of fact whether the notes, or either of them, had been paid by the Paxtang company, the insistance upon the part of the Penbrook company being that it had not parted with the ownership of the notes, but had merely exacted security and not payment to permit them to be taken temporarily from their possession by Mr. Fritz, president of the Paxtang company, to enable him to have them in his possession when he held his interview with Mr. Wiegand at Irvington, in February, 1923, for the purpose of collecting from the maker, if possible, the amount due on the notes. Assuming, but not conceding, the soundness of the appellant's contention respecting the law, the trial court could not have directed a verdict for the defendant because the facts upon which the appellant's argument is based were disputed. This made it a jury question. The position of the appellant is also untenable in assuming, first, that the defendant could set up as against the Paxtang company the defenses of misappropriation of the notes and lack of consideration had the notes not been discounted by the Penbrook company, and in assuming, in the second place, that if they came into the possession of the Penbrook company after maturity, with notice of their misappropriation and the failure of the maker to receive any consideration therefor, that this necessarily made the notes subject to the defenses set up in the answer of the defendant. As has been stated, the Paxtang company paid value for the notes. It took them without notice of the circumstances surrounding their issue or lack of consideration to the maker. The Paxtang company was a holder in due course. The Paxtang company was secondarily liable upon the notes after their protest. If the Paxtang company paid the amount due on the notes to the Penbrook Trust Company the Paxtang company had all its former rights, and could renegotiate the notes so as to give to its transferee or transferees all the rights which it had against the maker.

The one hundred and twenty-first section of the Negotiable Instrument act (3 *Comp. Stat.*, *p.* 3749) provides as follows:

"Where the instrument is paid by a party secondarily liable thereon, it is not discharged, but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent endorsements and again negotiate the instrument, except—(1) where it is payable to the order of a third person, and has been paid by the drawer; and (2) where it was made or accepted for accommodation, and has been paid by the party accommodated."

The exceptions mentioned have no application to the present case. If the Paxtang company paid the amount due on the notes and received the notes from the Penbrook company, it was remitted to all its former rights, and could again transfer its rights. The transferee, having received title from a holder in due course (Paxtang company), had all the rights of the former holder in due course, and could recover against the maker, Wiegand & Company. If Mr. Fritz, president of the Paxtang company, personally paid the notes, as the appelant contends, the situation as to the maker is not altered, as Mr. Fritz would stand in the position of the party to whom he had made payment, and if he renegotiated the notes to the plaintiff, the plaintiff would be returned to its former position. For these reasons the trial court ruled properly in refusing to direct a verdict for the defendant.

The appellant's fourth point deals with certain portions of the court's charge which it claims were erroneous. The court used in its charge an illustrative case which was in some respect dissimilar to the action being tried. We have read these portions of the charge and see in them nothing which was harmful to the defendant. Other portions of the charge, it is said, state the testimony incorrectly. If this be so, it is not necessarily reversible error, as the jury, not the court, is to determine the facts. The variance between the testimony and the statement of facts made by the court is so slight that we are of the opinion that the defendant was not harmed by the statements which it makes grounds of appeal.

The next ground of appeal briefed deals with the excep-

tion taken to the trial court's charging the following request submitted by the plaintiff, namely, "whether or not the Paxtang Shoe Manufacturing Company paid off one or both of the notes after maturity, does not affect the right of the plain- tiff to recover in this case, for the reason that if the Paxtang company had paid off the note it would have been entitled to recover in its own name, and the plaintiff, therefore, having possession of the notes, is entitled to recover in the right of the Paxtang company." Under the discussion of the refusal of the court to direct a verdict for the defendant, the propositions of law embodied in this request were considered and held sound. It was therefore not error to charge the request.

The last ground of appeal briefed is the court's refusal to charge the defendant's first request, which was: "This is a suit brought by the Penbrook Trust Company, as plaintiff, under a complaint in which certain facts are set forth, among others, that the plaintiff owns the notes in question. Evidence has been offered which, as insisted, contradicts this allegation. If you find that the plaintiff in good faith and for value and in the regular course of its banking business purchased the notes in question, and still owns them, your verdict should be for the plaintiff; but, if you find that the plaintiff is not the owner of the notes, but that the notes, or either of them, were paid by the Paxtang Shoe Company or Mr. Fritz to the bank, then your verdict must be for the defendant." This request was bad, because it precluded the jury from considering the testimony as to whether or not there had been a renegotiation of the notes to the bank. It has been pointed out that if the Paxtang company or Mr. Fritz paid the notes, and they were, after maturity, renegotiated to the plaintiff, then the plaintiff stood in the shoes of the Paxtang company, the payee, and had the rights of that company, which was a holder in due course under the circumstances under which the notes came into its possession. The trial court therefore ruled properly in refusing to charge this request of the defendant.

This disposes of all the grounds of appeal argued. The judgment is affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, MCGLENNON, KAYS, JJ. 15.

*Fo reversal*—None.